UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| CARI ANN WITHAM, | ) | Civil Action No.: 4:22-cv-00134-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **ORDER** |
| Kilolo Kijakazi, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for supplemental security income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

### A.    Procedural History

Plaintiff filed an application for SSI in October 2018. (Tr. 10). Her claims were denied initially and upon reconsideration.  Thereafter, Plaintiff filed a request for a hearing. Plaintiff and a vocational expert (VE) testified at a hearing in June 2021. The Administrative Law Judge (ALJ) issued an unfavorable decision on July 26, 2021, finding that Plaintiff was not disabled within the meaning of the Act.  (Tr. 10-24).  Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied in December 2021, making the ALJ's decision the Commissioner's final

decision. (Tr.1-3). Plaintiff filed an action in this court in January 2022. (ECF No. 1).

**B.     Plaintiff's Background**

Plaintiff was born on August 23, 1979, and was thirty-nine years old on the date the application was filed. (Tr. 22). Plaintiff had no past work. (Tr. 22). Plaintiff initially alleges disability due to degenerative deterioration syndrome, complex migraines, and endometriosis . (Tr. 78).

**C.     The ALJ's Decision**

In the decision of July 26, 2021, the ALJ made the following findings of fact and conclusions of law (Tr. 10-24):

1.     The claimant has not engaged in substantial gainful activity since October 26, 2018, the application date (20 CFR 416.971 *et seq.*).

2.     The claimant has the following severe impairments: lumbar and cervical degenerative disc disease, migraines, asthma, carpal tunnel syndrome bilaterally, left shoulder degenerative joint disease, knees, reflux, and obesity. (20 CFR 416.920(c)).

3.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can frequently push and pull with the upper extremities. She can never climb ladders, ropes, and scaffolds; and can occasionally climb ramps/stairs. She can occasionally balance, stoop, kneel, crouch, and crawl. She can perform frequent overhead reaching, handling, and fingering. She can have occasional exposure to vibration, fumes, odors, dust, gases, unventilated environments, and hazards (unprotected heights and dangerous moving machinery).

5.     The claimant has no past relevant work (20 CFR 416.965).

2

6.    The claimant was born on August 23, 1979 and was 39 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.    The claimant has a limited education (20 CFR 416.964).

8.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.    The claimant has not been under a disability, as defined in the Social Security Act, since October 26, 2018, the date the application was filed (20 CFR 416.920(g)).

## II. DISCUSSION

Plaintiff argues the ALJ failed to properly evaluate the opinions of Dr. Barksdale. The Commissioner argues that the ALJ's decision is supported by substantial evidence.

## A.    LEGAL FRAMEWORK

### 1.    The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential

questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW.  *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).  If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work.  *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party."  42 U.S.C. § 405(g).  The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence."  *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.

5

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.    ANALYSIS**

**Opinions:  Dr. Barksdale**

Plaintiff argues the ALJ failed to properly evaluate the opinions of Dr. Barksdale.

For applications filed on or after March 27, 2017, such as this action, the regulatory framework for considering and articulating the value of medical opinions has been changed. *See* 20 C.F.R. § 416.920c; *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (revisions to medical evidence rules dated Jan. 18, 2017, and effective for claims filed after Mar. 27, 2017). Importantly, the new regulations no longer require any special significance be given to opinions by a treating physician. *See* 20 C.F.R. § 416.920c (noting that the treating physician rule only applies to claims filed before March 27, 2017). The ALJ is not required to defer to or give any specific weight to medical opinions. 20 C.F.R. § 416.920c(a). Instead, the ALJ should consider and articulate in the decision how persuasive each medical opinion is based upon the factors of:  (1) supportability; (2)

6

consistency; (3) relationship with the claimant(length, frequency, purpose, extent, and examining); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 416.920c(b),(c). Supportability and consistency are the most important of the factors for consideration, and the ALJ is required to explain how he considered the supportability and consistency factors in evaluating opinion evidence. 20 C.F.R. § 416.920c(a), (b)(2). An ALJ is not required to explain how the remaining factors were considered. 20 C.F.R. § 416.920c(b)(2). In evaluating the supportability of an opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). In evaluating the consistency of an opinion, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 416.920c(c)(2).

On June 9, 2021, Plaintiff's attorney noted that the form was drafted by the attorney but was simply taken to the doctor to be completed and no role was played in formulating the opinion. (Tr. 2031). Dr. Barksdale saw Plaintiff every three to six months for diagnosis of hypertension, migraine headaches, gastroparesis, and anxiety. (Tr. 2032). Prognosis was good. Symptoms were recurrent headaches, abdominal pain, and diarrhea. (Tr. 2032). Plaintiff had headaches in varying times and severity. No clinical findings or objective signs were answered as to any of the diagnosis. (Tr. 2032). As to the question of "characterize the nature, location, and intensity/severity(mild to severe) of your patient's headaches," Dr. Barksdale simply wrote "migraines." (Tr. 2032). Symptoms associated with headaches were nausea/vomiting, malaise, and mood changes. Plaintiff had headaches 4-5 times a month lasting one to two days. (Tr. 2032). Plaintiff would be generally precluded from even basic

work activities and need a break during the times Plaintiff has a headache. (Tr. 2032). Under "describe the treatment and response including any side effects of medication that may have implications for working," Dr. Barksdale only wrote "dizziness," not answering what the treatment or medication was. (Tr. 2033). Depression, psychological factors, and anxiety affected Plaintiff's physical condition. (Tr. 2033). Plaintiff frequently experienced pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks. (Tr. 2033). Plaintiff was incapable of even low stress jobs due to severe anxiety and mild stress. Plaintiff could sit at one time for two hours. Plaintiff could stand at one time for one hour. (Tr. 2033). Plaintiff could sit at least six hours and stand/walk about four hours in a work day. Plaintiff needed to walk for five minutes every hour. (Tr. 2034). Plaintiff needed to take unscheduled breaks, 3-4 daily. Breaks would be ten to fifteen minutes long. (Tr. 2034). Plaintiff could frequently lift 20 pounds. Plaintiff could frequently perform posturals. (Tr. 2035). There were no hand limitations. Plaintiff would be absent more than four days per month. It appears the next question for how long symptoms had been present was answered "1-2 days;" however, the response to an earlier question indicated at least 12 months. (Tr. 2035). The form was dated June 7, 2021.

      The ALJ found Dr. Barksdale's opinion was not persuasive:

> As for medical opinion(s) and prior administrative medical finding(s), I cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. I have fully considered the medical opinions and prior administrative medical findings as follows:
> ...
> Collis Barksdale, M.D. provided a medical opinion in June 2021. Dr. Barksdale opined the claimant can sit 2 hours at a time up to 6 hours total; stand 1 hour at a time up to 4 hours total. The claimant must walk 5 minutes every hour. He said the claimant would need three to four unscheduled breaks daily. The claimant can frequently lift 20 pounds. She can frequently look down, turn her head, and hold her

4:22-cv-00134-TER    Date Filed 02/13/23    Entry Number 16    Page 9 of 15

head still. She can frequently twist, stoop, crouch, and climb. The claimant would be incapable of even low stress work and would miss more than four days of work per month. (Ex. B26F).

This is not persuasive. The opinion is not supported; Dr. Barksdale merely checked off boxes on a form, rather than provide an explanation for the limitations given. The opinion is overly restrictive in light of objective evidence, and appears to be based on the claimant's subjective complaints rather than an objective clinical assessment by the doctor.

(Tr. 20-21).

The ALJ continued discussion of the opinion and the evidence.[3] The ALJ reviewed the details of multiple exams that were normal in all categories, citing notes from Powdersville Primary Care(Exs. B2F/13, B2F), Bon Secours OB-GYN(Ex.B2F/27, B2F/35), Bon Secours Neurology(Exs. B2F/84), PA Rudsill's 2021 notes (Exs. B14F/18, B14F), neurology notes (Ex. B9F/4, B9F/10-11), 2020 notes from Powdersville Primary Care/Dr. Barksdale(Ex. B11F). (Tr. 20). The ALJ noted 2021 normal knee x-rays citing emergency room records (Ex. B25F/81). (Tr. 20; 1591). Plaintiff challenges the ALJ for discussing Dr. Barksdale's exams in finding Dr. Barksdale's opinion not persuasive; however, the supportability and consistency of a patient's own treating doctor's exams compared to that same doctor's opinion are the two most important factors in the opinion analysis. (ECF No. 12 at 12); 20 C.F.R. § 416.920c(a), (b)(2). Plaintiff appears to argue the exams should not

---

[3] In weighing Dr. Barksdale's opinion, the ALJ relied on his own erroneous statement that the MRI "from May 24, 2021 compared to prior MRI of April 25, 2019 showed **no** significant canal or neuroforaminal stenosis at any level no soft tissue abnormality. (Ex. B27F)." This is error. The May 24, 2021 MRI showed: "Multilevel neural foraminal stenosis most pronounced to a **severe degree** at right C3-4 and multilevel spinal canal stenosis most canals to a mild degree at right C3-4 with deformation of the right cord." (Tr. 2036). Plaintiff does not specifically argue about the MRI statements made by the ALJ in the ALJ's findings about Dr. Barksdale, but Plaintiff notes there are factual mischaracterizations by the ALJ about the record. It is unclear how much the ALJ relied on this misstatement("no" vs. "severe") of objective evidence in weighing Dr. Barksdale's opinion, such that meaningful review by the court is thwarted.

have been discussed because Dr. Barksdale "did not cite any of this as an explanation of his opined limitations." (ECF No. 12 at 12). However, the regulations direct the ALJ to not only analyze what explanation was given by the provider but direct the ALJ to examine the record as a whole for supportability and consistency of the opined limitations given. The ALJ also noted: "Every office visit, Dr. Barksdale notes the claimant has normal gait. (Exs. B17F; B25F)." (Tr. 20). The ALJ noted that Dr. Barksdale noted symptoms within his opinion of "dizziness, nausea, vomiting, malaise, mood change, and headaches." (Tr. 20). The ALJ then found that Dr. Barksdale's own examining records did not support these symptoms, citing 2021 treatment notes (Ex. B19F/5) and other exams where Plaintiff denied nausea, vomiting, and other complaints. (Tr. 20). The ALJ noted it was inconsistent with all the normal exams, citing Piedmont Orthopaedics records (Ex. B23F), emergency department records (Ex. B18F), Powdersville Primary Care/Barskdale records (Ex. B11F), and neurology notes (Ex. B9F). (Tr. 20). Below are summaries of Dr. Barksdale records cited by the ALJ in completing the opinion persuasiveness analysis.[4]

On October 23, 2018, Plaintiff was seen by Dr. Barksdale. (Tr. 457). Plaintiff complained of chest pains and having a headache for eight days with taking Maxalt once a day. (Tr. 457). Plaintiff's chest pain occurred at rest and did not occur when she was active. "She also complains of recurrent migraine headaches. She has been referred to neurology and most recently failed infusions but apparently there are plans for her to start a new medication, Aimovig." (Tr. 457). Upon exam, Plaintiff had normal neck, chest, and musculoskeletal. Plaintiff had normal mood/affect. (Tr. 460). Plaintiff was given several referrals.

---

[4] *See Reid v. Comm'r*, 769 F.3d 861, 865 (4th Cir. 2014)("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision").

10

On February 5, 2019, Plaintiff was seen by Dr. Barksdale. (Tr. 435) Plaintiff needed surgical clearance and complained of arm pain. History noted "history of some mood swings and depression. She also has recurrent migraine headaches." (Tr. 436). Upon exam, Plaintiff had normal neck and musculoskeletal. Plaintiff had minimal range of motion of wrist, diminished grip strength, and positive Phalen sign. (Tr. 438). Plaintiff had normal mood/affect. (Tr. 438). Diagnosis was carpal tunnel, GERD, generalized abdominal pain, and recurrent major depressive disorder in partial remission. (Tr. 438). Plaintiff was "healthy and has no contraindications to surgery." (Tr. 439). Depression was currently stable. (Tr. 439).

On April 2, 2019, Plaintiff was seen by Dr. Barksdale. Plaintiff complained of dizzy spells for two weeks, shortness of breath, and worsening back pain but currently was not having pain. (Tr. 416). On exam, Plaintiff had normal neck range of motion and normal musculoskeletal range of motion. Plaintiff had normal mood/affect. (Tr. 419). X-rays were ordered; Plaintiff was told to take ibuprofen. (Tr. 420).

On April 1, 2020, Plaintiff was seen by Dr. Barksdale. (Tr. 530, 764). Plaintiff complained of lower back/flank pain and anxiety. Plaintiff reported not seeing her psychiatrist for over a year and had taken herself off all of her antidepressants because she felt better without them but now had severe anxiety. Plaintiff reported she was very anxious on Buspar. (Tr. 530). Upon exam, Plaintiff was in no apparent distress with normal gait and normal affect. (Tr. 534). There are some records of positive cannabinoids drug screen. (Tr. 534). Plaintiff was prescribed Toradol for pain and a CT was ordered to rule out kidney stones. (Tr. 535).

In July 2020, Plaintiff was seen by Dr. Barksdale. (Tr. 747). Plaintiff complained about left arm pain. Plaintiff had surgery on the right, but at the time, the left did not need surgery. "She is

currently seeing neurology and states that her headaches are starting to improve on her current regimen. She otherwise has no other complaints." (Tr. 748). Exam was normal in all categories. (Tr. 752-753). Plaintiff was referred to pain management for low back pain and given a brace and splint for left wrist and referred to neurology. Lyrica was prescribed for back pain. (Tr. 754).

In August 2020, Plaintiff was seen by Dr. Barksdale. Plaintiff complained of lower right arm pain. In the recent past, she had a large occlusion right radial artery and vascular surgeon told her the pain should slowly improve and to use warm compresses. (Tr. 734). Plaintiff reported she took Toradol and had pain relief within thirty minutes. Plaintiff wanted a refill of tramadol. (Tr. 734). Plaintiff had normal exam in all categories. (Tr. 739). Plaintiff was prescribed Toradol but told could cause GI problems if taken too often. (Tr. 740).

On September 21, 2020, Plaintiff was seen by Dr. Barksdale. (Tr. 719). Plaintiff complained about upper left shoulder pain. Plaintiff requested a Toradol refill and took it for her migraines. (Tr. 720). Plaintiff was not at all feeling depressed. (Tr. 724). Exam was normal in all categories. (Tr. 724-725). Steroids were prescribed for her shoulder; Plaintiff was to see pain management. Plaintiff was advised Toradol was for very short-term use only as it could cause GI problems. (Tr. 726).

On October 20, 2020, Plaintiff was seen by Dr. Barksdale. (Tr. 706). Plaintiff complained of pain and weakness in her left arm and shoulder for two months. Plaintiff reported having difficult with concentration and focus. Plaintiff reported being on depakote for a few years and it helped tremendously with her headaches. (Tr. 707). Plaintiff's screen said "not at all" as to "depressed" or "hopeless." Exam was normal. (Tr. 712). Plaintiff was referred to orthopedic. (Tr. 713). It was suspected she dislocated her shoulder. "Etiology of her mental status changes is unclear." (Tr. 713).

On November 24, 2020, Plaintiff was seen by Dr. Barksdale. (Tr. 692). Plaintiff complained of very sharp pain and worried it was a hernia. Plaintiff denied nausea, vomiting, and diarrhea. (Tr. 693). Plaintiff reported she felt hopeless and depressed nearly every day. (Tr. 697). Exam was normal in all areas. (Tr. 698). Ribs were x-rayed. (Tr. 699).

On December 21, 2020, Plaintiff was seen by Dr. Barksdale. (Tr. 679). Plaintiff complained of right rib pain. X-rays were normal. Plaintiff reported it was level 10 pain. Etiology of pain was unrevealing. (Tr. 680). Plaintiff had no nausea, vomiting, or diarrhea. (Tr. 680). Upon exam, Plaintiff had normal exam in all areas. (Tr. 685). A CT was ordered. (Tr. 686).

In April 2021, Plaintiff was seen by Dr. Barksdale for side pain, a rash, allergies, and a constant wheeze. (Tr. 1279). Plaintiff was prescribed Flonase and Zyrtec and referred to GI. (Tr. 1279). "She did ultimately see gastroenterology and was diagnosed with gastroparesis." Plaintiff had no nausea, vomiting, or other complaints. (Tr. 1279). Plaintiff had a normal exam in all categories. (Tr. 1279-1280).

Plaintiff notes looking at the opinion as a whole, the ALJ stated "throughout 2019 and 2020, she denied having headaches," citing a 2019 visit from Dr. Nunez (Ex. B2F/47) and emergency room records (Exs. B10F, B18F). (Tr. 19);(ECF No. 12 at 13). Plaintiff argues that in May 2019, there was emergency treatment sought for a week long headache, citing page 603. Page 603 is imaging from 2017 and is unsupportive of Plaintiff's proposition. Exhibits cited by the ALJ show the following. Exhibit B2F/47 is an April 2019 visit note for hand concerns and states: "Other complaints include none." (Tr. 414). Exhibit B10F is a emergency room visit in May 2019 for a headache. (Tr. 654). Exhibit B10F is inapposite of the ALJ's statement of denial of headaches and may be the note Plaintiff was seeking to cite instead of page 603. Exhibit B18F is emergency visit in the year 2021

for abdominal pain where Plaintiff was negative for headaches and a November 2020 visit for back pain where Plaintiff had no headaches. (Tr. 1250-1255, 1265). Migraine is listed under history as "managed with PRN meds." (Tr. 1266).

There is information in the record in multiple areas("no" vs "severe" spine MRI, "denied headaches for two years" vs those same two years was treated in the hospital for a week long headache, and "records report no diarrhea" vs. record shows multiple diarrhea reports[5]) that may be supportive of and/or provide some consistency with Dr. Barksdale's opinions, which are the most important 20 C.F.R. § 416.920c(a), (b)(2) factors. Because of the ALJ's factual misstatements, it is unclear how much the ALJ relied on erroneous facts in weighing Dr. Barksdale's opinions and it is unclear if the ALJ's analysis of Dr. Barksdale's opinions is supported by substantial evidence.

Upon remand, the ALJ should take into consideration Plaintiff's briefed allegations of error and support findings with citation to substantial evidence and provide logical explanation from the evidence to the ultimate conclusions, taking care to rely on accurate facts from the voluminous record. *See Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015).

## CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections

---

[5] The record indicates multiple reports of diarrhea during the relevant time period. (Tr. 285, 547, 548, 551, 579, 580, 594, 582, 591, 1125, 1129, 1194, 1312).

405(g) and 1338(c)(3), the Commissioner's decision is REMANDED to the Commissioner pursuant

to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion.

s/Thomas E. Rogers, III

February 13, 2023                              Thomas E. Rogers, III
Florence, South Carolina                  United States Magistrate Judge